Our final case on the call of the docket today is Agenda Number 13, Consolidated Case Numbers 113721 and 113723, Griggsville-Perry Community Unit School District No. 4 v. Illinois Educational Labor Relations Board et al. Counsel, for the appellants, you're going to split your time and the light will go off when your time's up. Good morning, Your Honors. May it please the Court, Counsel. My name is Brett Legner. I'm an Assistant Attorney General and I represent the Illinois Educational Labor Relations Board in this matter. Your Honors, my co-appellant, Mr. Gilbert Kornfield, will present rebuttal on behalf of all the appellants. I'll handle the entire opening presentation. Your Honors, this Court should reverse the appellate court's decision and reinstate the Educational Labor Relations Board's final administrative decision holding that the district committed an unfair labor practice when it refused to implement the arbitrator's award. There are a few core principles at work in this case, Your Honors. First is the deferential standard of review. Generally, and as I'll get to in much more detail shortly, arbitrator Can I ask you just a factual question before you get going on that? Sure. Was Hyers a tenured employee? She was not. Okay. All right. And the reason for the question is, if it was yes, there's some due process rights under a Supreme Court case. But non-tenured? Correct. Probationary, I guess, would be the term. Thank you. Was it probationary? I guess that would be in terms of she was not tenured. She was subject to a yearly renewal. And she was not a certificated teacher either. I want to make that clear. She was a paraprofessional. A paraprofessional, exactly. So she was the librarian. How long did she actually work? How long did she actually work? I believe it was six years, six or seven years. And she still was probationary? Again, I'm using that term only to distinguish it from tenured. The arbitral decision, of course, gets a lot of deference. In this case, there's an extra layer of deference because the General Assembly in the Educational Labor Relations Act provided for the review of arbitration decisions to first go to the Educational Labor Relations Board instead of straight to the circuit court, as is the case in the Public Labor Relations Act, in which one party can file an action directly in the circuit court to enforce an arbitration award or to overturn it. Here, if a party wants to contest an arbitration award that's made under the Educational Labor Relations Act, the party must refuse to comply with the award, and then the other party brings an unfair labor practice contending that the refusal to comply is an unfair labor practice. The result of that is the General Assembly has interjected the Educational Labor Relations Board's expertise into this matter. So this court is reviewing the board's administrative decision for clear error, and the board itself is reviewing the arbitral decision to determine whether that decision drew its essence from the collective bargaining agreement. So in other words, the question before this court is whether the Educational Labor Relations Board committed clear error in determining that the arbitration decision drew its essence from the contract. Does the agreement to arbitrate disputes about employee discharges necessarily imply the requirement that the discharges be only for just cause? It does not necessarily imply a just cause provision. Any reason, then? For any reason? It also does not. No. It implies that it must not be arbitrary and capricious. So that's something somewhere between for any reason and just cause. Not necessarily in the middle, but not one of those. Going back to the probationary employee, why wouldn't you just say that the employee was at will as opposed to probationary for six years? The employee was not at will because she had, and I want to point out that the arbitrator essentially made a particular factual finding that the employee was not at well, and that factual finding is not subject to review. And the reason for that factual finding that the employee is not at will is that under this collective bargaining agreement, before an employee may be disciplined, including discharge, the employee must get noticed in a hearing. And because of principles of industrial common law and the parties negotiating past, that discharge decision must not be arbitrary and capricious. That means that the employee is not at will. Let me ask you a question about some definitions here. And I understand that labor and labor law, which have meaning, which always have meaning, especially here, and they have various terms of art, very specific terms. So can I ask you, and I will ask your opponent something similar. Help me define just cause, again, in the context of labor law. Sure. Just cause, arbitrary, capricious, and is there any recognized standard between the two? And then my final question is, where do those definitions come from? Okay. Everyone is using these terms. I don't see any sites or case or anything to inform us as to what those meanings are or where those meanings come from. Okay. Starting with just cause. Just cause essentially requires, and I think there are some citations to this in our brief, but just cause for discharge, for instance, requires some fit between the acts that have been found to have been committed and the discipline. In other words, this employee did this, and that justifies something as serious as discharge, as opposed to a one-week suspension. And you see that a lot in police merit board decisions, things like review of that, in terms of what is just cause. The appropriateness of the discipline? Is that how we figure what just cause means? That doesn't sound like defining what cause is. You said it's the fit between the two? Yes. A just cause standard, we're referring to just cause for the discipline imposed. And to meet that standard, there has to be a fit between the conduct and the discipline. And that's what just cause would be. And to do that, you can look at, again, the acts committed, whether the acts justify that level of discipline. You can look at the party's past dealings, whether Walmart fires its employees who do this, or whether they do something less. But here they fire them. Does it mean that it's reviewable, that the fit between the conduct and the discipline is reviewable? Is that what you mean by just cause? It is. Reviewability is an element, definitely. But a decision can be reviewable without requiring just cause. Just cause, again, just cause requires this look at the fit, looks at a comparison or a weighing of the conduct with the actual discipline imposed, versus arbitrary and capricious. Arbitrary and capricious doesn't necessarily require a strong fit between this conduct and this discipline, or necessarily consistency with the way the parties have acted in the past. It just can't be so out of the bounds of reason to make no sense whatsoever. There has to be some reason and support. So in other words... So is there something in between? Something in between arbitrary and capricious and just cause. I believe a lot of progressive discipline type regimes would fall there. I know you had many parts to your question, Justice. I don't remember if there are any I haven't reached yet. Which one of these three standards, just cause, progressive discipline, or arbitrary capricious, did the arbitrator come out saying that this contract fits in? Arbitrary and capricious. And there is another standard which is just non-reviewability. You can fire them for whatever reason and that's just not reviewable. And that standard wasn't adopted either. So you have just cause on one far spectrum, complete unreviewability on the other. And the arbitrator, and this is my last question, so your understanding is the arbitrator says under this agreement that the employer can fire, even if it's arbitrary and capricious. No. That is the limit on the employer's ability. Under this agreement, the employer cannot act arbitrarily and capriciously. So it's a higher standard. It's a higher standard than not being able to, or it is a higher standard than being able to fire an employee for any reason, imagined, real, you know, completely absurd. But it's not as high as a just cause. The employer does not have to show a fit between the conduct and the discipline imposed. The employer has to only show some reasoned basis. And the arbitrator, I want to point out, the arbitrator reached that determination by interpreting the contract. To the extent the arbitrator purported to interpret the contract, section 2.6 of the collective bargaining agreement, that's it. That ends the inquiry. The question isn't whether the arbitrator reached the right standard. The question is whether the arbitrator interpreted the contract. That's the centerpiece of your argument, right, that the court may reverse only when the decision is not derived from the essence of the contract. That's absolutely correct, Your Honor. It's absolutely correct. And regardless of what we call it and what standard we call it, the conclusion, just so I understand the facts here, the conclusion of the arbitrator that the due process provisions of the collective bargaining agreement was this process that was not afforded to the employee here. That's correct. Meaningful, meaningful, well, we can go further, right? An opportunity to respond, a hearing that was more than an empty formality. Correct. The reasons that the district was seeking dismissal. Correct. And what you're saying is that was all derived from the arbitrator from the essence of the contract. That's right. And reversal was not something that could be utilized by the court in light of that. Absolutely, absolutely. Once it is determined that that is derived from the essence of the contract, the case is over. The case is over. And it was, in fact, derived from the essence of the contract. Excuse me, counsel. Would the essence of the contract or essence of the collective bargaining agreement mean not only what's objectively in the agreement, but what's implied? Yes, it does, Your Honor. And we've cited some cases to that effect in our brief. And the arbitration law is very clear on that. And the Seventh Circuit has made this very clear, that collective bargaining agreements include express terms, but there's also implied terms, and the parties realize that. The parties also know that when you collectively bargain, you're not going to anticipate and you're not going to express everything that may arise. And they know that the arbitrator will be called to fill in blanks. And, again, that's perfectly appropriate. Additionally, they know, and this goes back to the U.S. Supreme Court's Steelworkers Trilogy cases, they know, the parties know, that there is, in labor arbitration, they know that there is a common law of the industry and a common law of the shop that is part of the contract, even if it's not expressed in plain terms. So it's a limited review, and the rub is whether or not it's within the essence of the contract. Correct, Your Honor. So apparently we're going to hear from the other side that it wasn't. They will contend that it's not within the essence of the contract. That's true. And I just wanted to touch on what it means to be in the essence of the contract to kind of try to clarify that. Because there are certain core societal policies or institutions that are informing this decision. The General Assembly has made clear that collective bargaining agreements with grievance processes ending in arbitration are favored. They've required it for these types of employer-employee relationships. The finality of arbitral awards has been recognized as an important policy, going back to U.S. Supreme Court decisions and this Court's decisions going back to the 1850s, that the finality of arbitral awards is an important societal institution and policy. In addition, there is the jurisprudence of the workplace, the notion that the arbitrator needs to be able to fill in blanks and needs to import notions of the law of the shop or the law of the industry that informs the contracts, even if not explicitly stated. So then what does it mean to draw, for a decision to draw essence from a collective bargaining agreement? It means that the arbitrator interpreted the contract and made a good faith application of its terms. This happens where the arbitrator looks to the language of the contract, examines the interrelationship of the various contract provisions, looks at the party's past practices, the party's bargaining history, the industrial common law, and applies the facts to those findings. This does not permit the court to determine that the court misinterpreted a contract provision or made an incorrect fact finding or misinterpreted what the past bargaining history was or what their past practices was. Those are all off limits. Counsel, the arbitrator found that the agreement did not give the school board the ability to dismiss arbitrarily or capriciously. Correct. Where is that in the essence of the agreement? That is in the essence of the agreement because, first of all, the agreement provides for a grievance procedure. Inhering in a grievance procedure is the notion that an employer will not act arbitrarily and capriciously. Why do you say that? Why do I say that? The arbitrator found, and this goes not just to inhering in the specific grievance procedure, but inhering in just commonly understood terms of the industry, employers are not permitted to act arbitrarily and capriciously. That is the arbitrator's construction of the industrial common law. And we defer to that. I mean, in other words, you're not citing us to a case. You're not citing us to a National Labor Relations Board decision. I mean, the arbitrator, for instance, cited to an arbitral decision from about 70 years ago, and I believe certainly at least cited to that, acknowledging that as being an element of the industrial common law, this notion that employers are not permitted to act arbitrarily and capriciously. Now, that also is derived from the specific language, albeit vague or ambiguous, of Section 2.6 of the agreement, which provides that a staff member shall be given reasonable prior written notice of the reasons for discipline and is entitled to personal representation at the meeting. From that specific contractual language, one could say, or one reasonably can say, one could interpret that to say, this creates protections for the employee. Notice, a hearing, notice in a hearing, hallmarks of due process. Hallmarks of due process. Hallmark of due process, no arbitrary and capricious conduct. And so the arbitrary and capricious, the no arbitrary and capricious action, can also then inhere from those specific terms in Section 2.6. Now, whether the arbitrator got industrial common law wrong, and certainly is not our position that he did, it is our position that he was certainly correct in that, and this arbitrator is a highly qualified arbitrator, professor at U of I, director of the Center for Advanced Study for Labor and Employment Law, writer of labor law treatises. But insofar as he purported to be applying industrial common law, which he is allowed to do, whether, you know, the correctness of that, whether he interpreted that correctly, again, is not something that is subject to review, judicial review. Does it make any difference that they were unable to reach an agreement over the term, the just cause provision? It, it, it, it. And if so, how does that impact the analysis? The, given that they were not able to reach an agreement, the arbitrator, first of all, it was something for, appropriate for the arbitrator to look at, the party's bargaining history and whether, what they could reach an agreement on and what they specifically could not reach an agreement on. If the decision is they explicitly could not reach an agreement on just cause such that, then the, the inference could be that, therefore, just cause can't be the standard. Similarly, they weren't able to reach an agreement that probationary employees could be fired for no reason whatsoever. So that can't be the standard. So the cons, the fact that there's contract silence, parties when they're in collective bargaining situations, negotiations, know that sometimes they can't reach an agreement on certain things. They, they can reach agreement on lots of things. They embody those in the contract and they know that those blanks will be filled in by arbitration. The arbitral process will fill in the, the, the, the blanks. They knew that. They, they knew the arbitrator would do this. The arbitrator properly looked to their bargaining history, realized that these are the, the, the ends of the spectrum that the parties both proposed but couldn't reach on, and went somewhere in the middle. Was, did the parties bargain over just cause? Just cause was something that was proposed by the district. The, the arbitrator found that just cause was something that was proposed by the district and, and rejected. So, so the district proposed, and I don't see the words just cause, but the district proposed a five-year probationary period and during that period it could, it could be arbitrary and capricious during that five-year period. It could. And, and it, it might, I think that's my understanding of basically what the, the bargaining position of the district was. For a five-year period there could be discharge for arbitrary capricious reasons and afterwards not. Is that the same as just cause? That, there, the, the, the district didn't propose just cause. The union proposed just cause. What the union proposed apparently was, from what I can, because I don't see the word just cause anywhere, the union proposed progressive discipline. Right. So does that mean just cause? Leading up to, ultimately the last stage of progressive discipline would, would be termination. So you go through, instead of just jumping straight to discipline, you go through, you know, first, first violation is a censure, second is a one-week suspension with pay, then a one-week suspension without pay, six-month suspension, then discharge. Discipline equals just cause, because I thought before you told me that it, it's an intermediate step between just cause and arbitrary and capriciousness. Progressive discipline can mean different things, because there's different forms that a progressive discipline regime can take. What I meant when I said it's a, it's an intermediate step between just cause and arbitrary and capriciousness is that instead of jumping straight to termination for these reasons, you have to go through this process before you can get to, before you can get to termination. So the arbitrator looked at the proposal of the union. Yes. And the proposal of the district and, and came to something in between, but we're not quite sure, I'm not really clear on what the in-between is. The in-between is it can't be arbitrary and capricious. And again, that's not splitting it right down the middle. It's a very low standard. But the arbitrator said just cause. Mr. Langer, excuse me. I think you, I hope you answered your question. Time's expired. Okay. Do you have more questions, Justice Tice? Okay. Thank you very much, Your Honors. Okay. Thank you. I hope you answered it. Thank you. Counsel for the appellee. May it please the court. Counsel, I'm Larry Custer, and I'm here with my partner, Ryan Byers, and we represent Grigsville-Perry Community and School District. The appellants have missed what the real issue in this case. This is not a case about contract interpretation. It's a case about the arbitrator dispensing his own brand of industrial justice. And there are two very crucial set of facts here that the court needs to understand what's happened. The arbitrator wrote in the award on remand that he could not award just cause because the parties had not agreed to it. And the law is clear that if the parties expressly reject a proposal during that particular result in the arbitration award, what happened in the bargaining in this case is that 2.6, the issue in terms of the Yes. So you're not quarreling with the fact that if the arbitrator had only ruled within the essence of the contract that there isn't a problem. You're saying he's outside of that contract. He never under the test of essence of the contract. He couldn't get to the point where he could decide the case under the essence of the contract test because his award, he was awarding the very things that the parties, particularly the union, rejected in bargaining. What happened is that I'm going to let you go here. Okay. Before you even get into that, right? Nothing particularly earth shattering about the award, right? Reason for dismissal. It absolutely is. Time to respond, a legitimate hearing. It is absolutely earth shattering because it completely is opposed to the actual intentions of the parties as they bargained. If this court reverses the appellate court and says that under 2.6, notice of reasonable prior notice and the opportunity for a union representative to appear before a school board, if that requires a substantive standard for dismissal standard every time this appears in a contract and the point is nobody knows what just cause means because it all depends upon what the arbitrator means and if he decided it in the essence of the agreement, then it can't be reviewed even if he's wrong on the law, wrong on the facts, completely wrong. In this case, we have a clear set of facts in which the negotiations between the union and the Board of Education resulted in a tentative agreement on April 21, 1997, on the 2.6 provision of the contract, which provided that if an employee was required to appear before the school board, that they would have to have prior written notice and they could be accompanied by essentially union representation. The testimony at arbitration from the union person who was at the table is that this was a procedural provision. When that was tentatively agreed to, the issues of substantive standard for dismissal were still on the table. The union proposed progressive discipline. The ultimate carrying out of progressive discipline is just cause and that was acknowledged in the record subsequently by the union. The Board of Education came back with a proposal that proposed hearing procedures of prior written notice, of union representation, of the right to present evidence, and the right to receive a written decision, same thing the arbitrator proposed or awarded in his contract. The Board of Education also proposed that there be a standard of a manifest weight of the evidence standard to judge whether or not the board's action and the arbitrator's action was appropriate, a reasonableness standard. Now, the union rejected that at the table and the testimony at the arbitration by the union chief negotiator was that the union and the words were rejected expressly every bit of the board's proposal, termed it volatile. Now, there we have those two positions. Negotiations didn't go further. What happened is the union proposed that the parties respectfully or mutually waive both of their proposals. The result that was left was employment at will. The board accepted that. Now, the whole central idea that the arbitrator gets to that somehow the parties intended to meet in the middle an arbitrary and capricious standard is the one in the middle, it lies completely and directly in face of the real facts of what happened in bargaining because that was rejected by the union. You can't then resurrect that and decide that it is the middle ground because the board's proposal was not for total unreviewability, but for a reasonable standard. That got rejected, but when the proposal was put forward by the union to mutually withdraw, the result was that you were left with the employment by will. And you can't argue, you cannot argue that this wasn't contemplated by the parties during negotiations. When you're negotiating a standard for dismissal and you don't come to that standard and you put off of the table just cause and you put off the table any kind of reason. What specifically, Mr. Custer, is wrong with what I believe the opposing counsel's argument to, at least in Part B, that the arbitrator did not impose a just cause standard. He merely concluded that implicit in the due process provisions of the collective bargaining agreement was that the process due to the employee must be meaningful. There was no due process provision in this contract. It is not like Harrisburg. And the way the arbitrator treated the arbitrary and capricious standard, as the appellate court said, was just just cause by another name. It was a just cause rose and it smelled the same. He awarded a test of arbitrariness and the same, substantially the same procedures as had been rejected by the union. I want to give you a chance because you're not going to get up again. What are they going to say was the due process standard provision in the contract? And how would you address that? Sure. There are two awards in this case. The first one you have to look at is where I think the real intention of the arbitrator is, and that's the original award. He comes up with this idea, this test of arbitrariness, out of, I submit, thin air. He invented it. He wrote specifically that it was based upon his instinct and the fundamental notion of what is afforded by a fair hearing. Fairness is a personal opinion. You can't have the essence of the agreement if what you've based it on, as the law cited in the briefs, is feeling a body of law, a policy outside of the contract. So he comes up with this feeling. You don't get to any analysis of the contract until the remand, the award on remand, and then suddenly there is, oh, well, we have an ambiguity in 2.6 under reasonable prior written notice. Because the parties didn't contemplate this, they wanted to meet in the middle ground. You can't get to that kind of analysis when what you're looking at in terms of what happened actually in bargaining. But, counsel, are you, Justice Thomas, are you? I am. Okay. Aren't there a line of federal cases which hold that an agreement to arbitrate disputes about employee discharges necessarily implies a requirement that discharges are only for just cause? I don't believe those cases hold that. I don't believe there is anything that says that it's an implication. But in this case. But the logic of those cases is what I'm talking about, that if an employer were free to discharge its employees for any reason or no reason, then it's a net will employee, then the right to arbitrate employment grievances related to the interpretation or application of collective bargaining is meaningless. I don't agree with that, and particularly under the facts of this case. Under the facts of this case, the negotiations concerned the question of just what's the dismissal standard going to be. And the parties put that off the table. And what does arbitration mean? What would the arbitrator do? The arbitrator under these facts could do nothing but determine that the employee was discharged if the board provided the notice and provided the union representation. Nothing more. Because there's no standard. He is imposing a standard, a dismissal standard, that the parties did not agree to. And he says in his award on remand that he can't do that. So in this situation, what is so disturbing here is what the appellants want is for the court to give them what they didn't get at the bargaining table. And this bargaining, this contract was bargained in 1997 and 1998. There have been successor contracts. These provisions have never been changed in the over the course of that period of time. Counsel, may I ask you this? Is this what the arbitrator is saying? And you said a moment ago that there was agreement about hearing. We're not going to call it due process because I think that maybe has its own term of art, a due process clause. I have to be careful. But there was an agreement to some kind of hearing. No, there was not an agreement as to a hearing. There was an agreement that there was a procedural, procedural. And if you look at Harrisburg, there was the distinction between procedural and substantive standard. And that's what I think I want to try to get to. There was some agreement as to some procedure. Let's put it that way. Okay. But no agreement, you said, as to a standard to be applied. That's correct. For that kind of hearing, right? Correct. Isn't what the arbitrator is saying then that there has to be some kind of standard? If you've agreed to a hearing, there has to be some kind of standard. And that's what I'm struggling with. You just can't have people come in and talk or whatever unless you have some structure. I think, isn't he saying there has to have been implicit in the agreement to have a hearing some kind of standard to be applied or a hearing is meaningless? No. I don't think a hearing is meaningless. When you have a situation, particularly we're dealing here particularly in a small town, and these people all know each other, and the record shows that the Board of Education had had complaints about this employee. They knew about it. But when you have these people have to come together, and there was a pre-termination hearing, those things have an impact on people. They have an impact on board members. But the point here, when you say there has to be, and that's the problem in terms of the arbitrator saying, out of this blue, we're going to have a standard. But it can't be a just cause standard because under the arbitrator's view, there was a rejection. He failed to look at the fact that there was also a rejection of the reasonableness standard that he imposed and the hearing procedures. The instructions, bargaining and contracts are to be settled by the parties at the collective bargaining table. Not from the standpoint of coming to court. And it becomes extremely important in the whole question of the validity and the faith that lay people like board members all across this state have. That what you bargain is what you can rely on, and then the arbitrator will decide those things. If we have as we have here, the arbitrator sitting in judgment that in this, under this record, that we can ignore all that, we can put in, imply things that were specifically bargained. And because they were specifically bargained, that becomes one of the most important things that differentiates this case. That's what the appellate court found in terms of the arbitrator dispensing his own brand of industrial justice. He comes and as you said, where do these things come from? They have to come from the bargaining of the parties. We don't have a situation here under the facts of this case where the parties didn't confront it. They confronted it. And we certainly ask that the judgment of the appellate court be affirmed. When you were talking about Harrisburg and earlier cases, I thought you were careful to distinguish between hearing and meeting. 2.6 refers to meeting. Is there another section of the contract that refers to a hearing? No. Is there a difference between a hearing and a meeting, the implications that that would have? Well, yes. I mean, a hearing might be construed to mean all sorts of the notice and those sorts of things. Of course, in this particular case, those particular procedures were put forward in a board proposal. Now, we realize that these were initial proposals. But the union chose not to continue to bargain over this issue, but proposed to mutually waive those proposals. And that takes all of that off the table. That leaves you under the facts of this case with employment at will. So critical to your analysis here, counsel, is the fact that these terms were bargained over and no agreement was reached. Not only bargained, but rejected. Both parties, the record shows that both parties rejected the proposal of the other, the ones that were on the table. And then when the proposal was made to mutually withdraw, that was accepted because then that leaves employment at will. The facts of this case, because of those facts, the application is very narrow if you affirm the appellate court. If you reverse, you're changing the law in the state of Illinois to affect every school district in this state, and you have no idea where you're going to go on that because under the argument on the position of the appellants, the arbitrator can do just about anything he wants to if he can get to essence of the agreement. Thank you. Thank you. Rebuttal? Your Honors, I need Gilbert Cornfield. I need five minutes to correct distortions that we've heard in 75% of the matters which have been presented to you today. Let me give you the essential facts, which are not in dispute. The teacher, not a teacher, she was a paraprofessional, the collective bargaining agreement only covered non-certified employees of the district. She was employed 11 years in the district. The only employee with the status of exemplary under the collective bargaining agreement. The principal went to the school board in February of 2008 and shared with the school board material that had never been placed in the employee's personnel file, including anonymous, unspecified complaints allegedly from a parent or other school board members. And by the way, the reference to school board members having received complaints was never shared with the employee. In February, when the principal in an executive session went before the school board with this material that had never been shared with the employee, never been placed in her personnel file, the board voted upon her recommendation to terminate her. The superintendent, after the meeting, gave the employee the opportunity to resign. In March, at the school board meeting, the next school board meeting, the school board formally voted to terminate her. Now, we've heard unbelievable, frankly, statements about what's in the contract and what is not in the contract. There's been no reference at all today to 2.1 of the collective bargaining agreement, which is referred to by the arbitrator, was extensively a part of the transcript before the arbitrator. 2.1.1, on page one of the contract, reads, Every employee shall have the right to add to and review material in his or her official, in capital letters, personnel file, and attach dissenting or explanatory material to any document or other piece of material on file. That was not done with this employee. The employee did not even know the principal was going before the board and sharing material that had never even been mentioned by the principal to the employee. Then, under 2.6 of the collective bargaining agreement, that's the provision that's been solely discussed today in our 2.1. The school board, having received this material in executive session and never shared with the employee, had voted to discharge her. Then she goes before a meeting of the school board, and they confirm the discharge. It is on that basis that the arbitrator found, by reading 2.1, 2.6 of the collective bargaining agreement together, that the individual did not receive the process required under the collective bargaining agreement to terminate her. That is the basis of the essence of the agreement. There is nothing in this record about just cause. That is a fiction that's been raised by the employer. The arbitrator, even in his first decision, rejects just cause because it's not mentioned in the collective bargaining agreement. In fact, the arbitrator doesn't deal with the substance of the reasons for discharge. He found that the process wasn't followed, particularly a fundamental right, not only under the contract, but under the Personnel Review Act, that the individual be apprised of allegations against her, anonymous, opportunity to respond, and they should have been placed in her personnel file. As a matter of fact, the material did not come forward until at the arbitration hearing we insisted, and the principal, to all the record, had to go into her office to get this material, which had not been part of the personnel file, but which she had shared with the school board. The decision of the arbitrator does not deal with the substance of why a person under this contract can be terminated. What the arbitrator deals with is what is the process that has to be followed when you read 2.1 and 2.6 of the contract before he can terminate. Now, let us say all of that had been followed, which hadn't been here, and it wasn't before the arbitrator. And we had a second arbitration on the reasons for discharge, which is not here. And if I were before you, I would say arbitrariness is a basis for reviewing terminations of so-called at-will employees in the public sector. Now, in the public sector, when you have a public body and someone is adversely affected by actions of that public body, then you can file a petition for writ of certiorari. And under our common law, a petition for writ of certiorari is considered the same way as administrative review. For example... May I ask you a question? Yes, of course. I think you're arguing that the ultimately the decision was about procedural rights and not substantive rights. Absolutely. All this discussion, 75 percent of the discussion today is irrelevant to the case. It had nothing to do with just cause, arbitrariness. It never was reached by the arbitrator. Justice is... So I'm incorrect when I read that the arbitrator found that the agreement did not give the school board the ability to dismiss arbitrarily or capriciously. I don't think the arbitrator didn't deal with it. What he did say at one point, after reviewing what had happened, that the actions of the school board in that light, the fact they didn't file the contract was arbitrary. He happened to use the word arbitrary. But if you read his award, it doesn't go into the substantive reasons why a school district or this school district could discharge. It says you have agreed to certain procedures. Now, in reviewing the negotiating history, the purpose he was... That was to determine that the parties had not... That the negotiating history could help him or not help him interpret the contract. The negotiating history did not deal with just cause. The union never proposed just cause. The union had proposed a procedure. The school board had proposed a procedure. And it was correct that in order to arrive at their first agreement, they both withdrew their procedures, those proposals. And what was left was 2.1 and 2.6, which the arbitrator determined it applied. If this court sustains the appellate court, then we will have countless litigation over whether an arbitrator has ruled based upon the essence of the contract. It's the reverse of what counsel is saying. If you sustain the appellate court, you're inviting... It does not arrive or it doesn't base upon the essence of the contract by imposing their interpretation of the contract. The majority of the appellate court was in error because they substituted their judgment about the contract for the arbitrator. Thank you. Thank you. Consolidated case numbers 113721 and 113723. Grigsville-Perry Community Unit, School District Number 4 versus the Illinois Educational Labor Relations Board is now taken under advisement. It's Agenda Number 13. We wish everyone a happy Thanksgiving next week, despite the contentious arguments today. And that concludes our call to the docket for today. Mr. Marshall, we stand adjourned until Tuesday, November 20, 2012, 9 a.m.